**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| JIANLONG BIOTECHNOLOGY CORP. LTD.<br><br>Plaintiff,<br>v.<br><br>UNITED STATES,<br><br>Defendant. | Court No. 26-03642 |

**COMPLAINT**

Pursuant to Rule 3(a)(2) of the Rules of the United States Court of International Trade, Plaintiff, Jianlong Biotechnology Corp., Ltd., ("Jianlong"), by and through its counsel, alleges and states as follows:

**ADMINISTRATIVE DECISION TO BE REVIEWED**

1. Plaintiff Jianlong brings this action pursuant to, and in accordance with, section 516A(a)(2) of the Tariff Act of 1930, as amended (codified at 19 U.S.C. § 1516a(a)(2)).

2. Plaintiff contests the final determination issued by the U.S. Department of Commerce ("Department" or "Commerce") in the eleventh administrative review of the antidumping duty order on xanthan gum from the People's Republic of China covering the period of review from July 1, 2023, through June 30, 2024. Xanthan Gum from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2023-2024, 91 Fed. Reg. 43,610 (July 16, 2026) and accompanying Issues and Decision Memorandum ("I&D Memo") (collectively, "Final Results").

## STANDING

3. Plaintiff, Jianlong Biotechnology Corp., Ltd., is a foreign producer and exporter of subject merchandise (xanthan gum from China) and was a respondent in the Commerce administrative review that is contested here. Plaintiff therefore is an interested party within the meaning of 19 U.S.C. § 1677(9)(A). Jianlong actively participated in the administrative review through submission of factual information and written arguments and thus is a party to the proceeding as defined in 19 C.F.R. §351.102(b). As an interested party that actively participated in the underlying administrative proceeding, Plaintiff has standing pursuant to 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## JURISDICTION

4. This Court has exclusive jurisdiction over this matter under 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2).

## TIMELINESS

5. The subject Final Results, which is being challenged herein, was published in the Federal Register on July 16, 2026. Xanthan Gum from the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2023-2024, 91 Fed. Reg. 43,610 (July 16, 2026). On August 14, 2026 – within 30 days after the publication of the subject determination – Plaintiff filed a summons to initiate this action. Accordingly, this action was commenced within the period specified in 19 U.S.C. §§ 1516a(a)(2). This Complaint is being filed within 30 days after the date on which the summons was filed. Therefore, according to the provisions of 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rules 3(a)(2) and 6(a) of the Rules of the U.S. Court of International Trade, this action has been timely brought.

## STANDARD OF REVIEW

6. This Court reviews final determinations issued by Commerce pursuant to 19 U.S.C. § 1675 to determine whether they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## PROCEDURAL HISTORY

7. On August 14, 2024, Commerce published in the *Federal Register* a notice of initiation of the eleventh administrative review of the antidumping duty order on xanthan gum from China with respect to a number of exporters including Plaintiff Jianlong covering the period July 1, 2023, through June 30, 2024. Initiation of Antidumping and Countervailing Duty Administrative Reviews, 89 Fed. Reg. 66,035 (Dep't Commerce, Aug. 14, 2024) ("Initiation Notice").

8. On September 13, 2024, Jianlong submitted a separate rate certification ("SRC") to Commerce to certify that Commerce had granted Jianlong separate rate status in a prior administrative review and that its separate rate status was currently applicable and had not been revoked. Jianlong's SRC noted that, except for one shipment that was sold directly to an unaffiliated U.S. customer, Jianlong exported the subject xanthan gum to the United States by selling to its affiliated U.S. purchaser, Jianlong Biotechnology Corp. ("Jianlong USA"), which resold the xanthan gum to unrelated U.S. customers.

9. On February 19, 2025, Commerce issued a supplemental questionnaire requesting additional information regarding Jianlong's separate rate status. The supplemental questions requested additional information about two of Jialong's shareholders and their relationship with Chinese government entities. Commerce did not ask any questions about Jianlong's sales to its

U.S. affiliate Jianlong USA or how they were resold to unrelated U.S. customers.

11. On March 4, 2025, Jianlong submitted its response to Commerce's supplemental SRC questionnaire.

12. Aside from the SRC supplemental questionnaire, Commerce did not issue any supplemental questionnaires to Jianlong. At no point in this review did Commerce ask any questions about Jianlong's U.S. sales that were made through its U.S. affiliate to unaffiliated U.S. customers or directly to the U.S. customer.

13. On December 11, 2025, Petitioner CP Kelco Inc. ("CP Kelco") filed comments with Commerce in advance of Commerce's preliminary results of the 2023-24 administrative review. In these comments, CP Kelco did not raise any issues on the affiliated party sales transactions between the mandatory respondents (Neimenggu Fufeng Biotechnologies Co., Ltd. ("Fufeng") and Deosen Biochemical (Ordos) Ltd. ("Deosen")) and their respective U.S. affiliated importers (First Biotech and Deosen USA) or by Jianlong.

14. On January 9, 2026, Commerce published its preliminary results of this administrative review. Xanthan Gum from the People's Republic of China: Preliminary Results of the Antidumping Duty Administrative Review, Rescission, in Part, and Preliminary Determination of No Shipments; 2023-2024, 91 Fed. Reg. 959 (Jan 9, 2026) and accompanying Issues and Decision Memorandum (collectively "Preliminary Results"). For Jianlong, Commerce preliminarily found that Jianlong was eligible for a separate rate. As a non-individually examined company receiving a separate rate, Commerce assigned a dumping rate of zero percent to Jianlong because Commerce had calculated a zero percent dumping margin for both the mandatory respondents (Neimenggu Fufeng Biotechnologies Co., Ltd. ("Fufeng") and Deosen Biochemical (Ordos) Ltd. ("Deosen")) in this review.

15. On February 3, 2026, case briefs were filed with Commerce comment on Commerce's Preliminary Results. Petitioner CP Kelco's case brief did not raise any issue regarding whether the sales from Fufeng or Deosen to their U.S. affiliates were bona fide sales or whether the entered value, U.S. duties, or inventory carrying costs had been misreported by the mandatory respondents Fufeng or Deosen. Petitioner's brief did not raise any issues related to Jianlong.

16. Concurrent with Commerce's eleventh administrative review of Xanthan Gum from China, U.S. Customs and Border Protection ("CBP") had initiated and was conducting its own investigation of imports of Chinese xanthan gum. On July 31, 2025, CBP's Trade Remedy Law Enforcement Directorate ("TRLED") issued its Notice of Initiation of Investigation and Interim Measures pursuant to the Enforce and Protect Act ("EAPA") on whether antidumping duties on xanthan gum from China were being evaded by three U.S. importers, including Jianlong Biotechnology Corporation ("Jianlong USA"). CBP initiated the EAPA investigation pursuant to allegations filed on March 27, 2025, by CP Kelco U.S., Inc. ("CP Kelco") that the imports of xanthan gum were undervalued.

17. The period of investigation of the EAPA investigation was from April 4, 2024, through the pendency of the EAPA investigation. The start of the EAPA period of investigation was one year before April 4, 2025, the date CBP acknowledged receipt of the properly filed EAPA allegations by CP Kelco.

18. The period of review of Commerce's eleventh administrative review of the antidumping order on xanthan gum from China was July 1, 2023, through June 30, 2024. The period of review of Commerce's eleventh review overlapped with CBP's EAPA period of review by less than three months (i.e., April 4, 2024- June 30, 2024).

19. In CBP's July 31, 2026 EAPA Initiation and Interim Measures Notice, CBP determined there was sufficient evidence in CP Kelco's allegation to warrant the initiation of the investigation of the three importers; however, CBP determined there was not enough information to warrant the imposition of interim measures on Jianlong USA (and First Biotech, Fufeng's U.S. affiliated importer) because these importers had provided information and supporting documentation that the transfer price of the xanthan gum from the Chinese suppliers to the U.S. affiliates was sufficient to allow the Chinese sellers to recover their costs. In contrast, CBP did impose interim measures on Deosen USA who did not provide any explanation in its CF28 questionnaire response to CBP regarding the basis for appraisement and whether the related party transaction might influence the price paid for the merchandise.

20. Jianlong and Jianlong USA participated fully in CBP's EAPA investigation, including submitting responses to CBP's CF28 questionnaires (June 16, 2025), CBP's requests for information ("RFI") (September 17, 2025, and September 26, 2025), CBP's supplemental RFI (November 5, 2025), and written arguments (January 7, 2026).

21. On November 12, 2025, CBP placed on the record of its EAPA investigation copies of certain documents from Commerce's administrative reviews of xanthan gum from China. These documents included the Commerce questionnaire responses and verification reports of Fufeng and Deosen but did not include any Commerce questionnaire responses or verification reports of Jianlong because Jianlong has yet to participate as a mandatory respondent in any Commerce administrative review of xanthan gum from China.

22. On February 26, 2026, CBP's TRLED issued its Notice of Determination as to Evasion and found that there was substantial evidence that the three importers, including Jianlong USA, had evaded antidumping duties by importing Chinese-origin xanthan gum that

was undervalued. For each of the three importers, CBP determined that no *bona fide* sales occurred between the importers and their related Chinese supplier.

23. Based on this determination of no *bona fide* sales, CBP determined that the transaction value that utilized the priced charged the U.S. importers by the affiliated Chinese suppliers was not an appropriate basis of appraisement for the importers. CBP attempted to recalculate the appropriate entered value using commercial invoices from the importers to the final unrelated U.S. customers, the financial statements, international airway bills, freight forwarder/ broker invoices, and entry summary information. CBP's recalculated entered value was higher than the entered values reported by the three importers. The entered values recalculated by CBP for First Biotech (Fufeng) and Deosen USA (Deosen) were significantly higher than the entered values originally reported by the importers. For First Biotech, CBP calculated that the entered value should be 58.36% higher; based on a simple average of the examined entered values that ranged 39.88% to103.49% higher. For Deosen USA, CBP calculated that the entered values should 88.08% higher based on a simple average of the examined entered values that ranged 59.60% to152.89% higher. In contrast to First Biotech and Deosen USA, CBP calculated that the entered values for Jianlong USA were only slightly higher (14.00%) than the entered values originally reported, based on a simple average of the examined entered values that ranged 3.58% to 33.40% higher.

24. On April 21, 2026, Commerce placed the public version of TRLED's February 26, 2026, EAPA Notice of Determination as to Evasion on the record of Commerce's eleventh administrative review of the antidumping duty order on xanthan gum from China.

25. On May 1, 2026, Fufeng placed the full EAPA record on the record of Commerce's eleventh administrative review of xanthan gum from China.

26. On Friday June 12, 2026, after close of business, Commerce issued its Post-Preliminary Analysis in the eleventh review. Commerce in its Post-Preliminary Analysis determined that application of facts available with adverse inferences (AFA) to the two mandatory respondents, Fufeng and Deosen, based on the new factual information contained in CBP's EAPA determination of duty evasion by undervaluing imports of xanthan gum from China.

27. Commerce's Post-Preliminary Analysis was issued 154 days after the Preliminary Results determination was published, 129 days after case briefs had been submitted, and just 19 days before the Final Results determination was due to be issued by Commerce on July 1, 2026.

28. Commerce originally set a deadline of June 16, 2026, for interested parties to submit comments on Commerce's Post-Preliminary Analysis and June 22, 2022, 2026 for rebuttal comments. After extension requests submitted by multiple interested parties, Commerce partially extended the deadlines for comments and rebuttal comments by two days to June 18, 2026, and June 24, 2026, respectively.

29. On June 18, 2026, Jianlong submitted comments to Commerce in which it argued *inter alia* that Commerce arbitrarily provided an insufficient amount of time for interested parties to review and comment on Commerce's Post-Preliminary Analysis Determination, that the decision to apply AFA to Deosen and Fufeng was not supported by substantial evidence and not in accordance with law, and that the calculation of the final dumping margin for Jianlong and other separate rate respondents was not in accordance with law.

30. Jianlong and other respondents requested that Commerce should defer making its Final Results determination until after CBP Headquarters made its final determination after reviewing TRLED's original EAPA determination.

31. On June 25, 2026, Commerce did extend the deadline for the Final Results by seven days to the maximum 180 days after the publication date of the Preliminary Results. Commerce only stated it was "not practicable" to complete its Final Results by the current July 1 deadline and required additional time to prepare the final results. Commerce did not respond to any requests to defer the final results until after CBP Headquarters made its final determination in its review of TRLED's EAPA determination.

32. On July 8, 2026, Commerce placed on the record of this review a copy of CBP Headquarters administrative review determination of the TRLED EAPA determination. CBP's administrative review determination had numerous differences in its analysis and findings compared with TRLED's original EAPA determination. Commerce, however, did not give interested parties an opportunity to comment on CBP's administrative review determination.

33. On July 13, 2026, Commerce issued its final results determination for the eleventh administrative review of xanthan gum from China. Final Results. Consistent with its Post-Preliminary Analysis determination, Commerce in the final results continued to find that application of AFA to Fufeng and Deosen was appropriate. Commerce assigned a dumping margin of 35.66 percent for Jianlong and other separate rate respondents based on an average of the dumping margins calculated for Fufeng (38.76 percent) and Deosen (22.22 percent).

## ISSUES PRESENTED BY THE ACTION AND PLAINTIFFS' STATEMENT OF CLAIMS

34. In the following respects, and for other reasons apparent from the record of the administrative proceeding, Commerce's final results determination for Jianlong is unsupported by substantial evidence and otherwise not in accordance with law.

## COUNT ONE

35. Paragraphs one through thirty-four are incorporated herein by reference.

36. For the Final Results, Commerce deprived interested parties of their administrative due process rights to have a meaningful opportunity to review and comment on Commerce's Post-Preliminary Analysis.

37. Given the manner in which it arbitrarily released the Post-Preliminary Analysis of CBP TRLED's EAPA duty evasion determination, Commerce did not provide interested parties with sufficient time to review and provide meaningful comments on Commerce's stated findings in its Post-Preliminary Analysis that were significantly different from its Preliminary Determination.

38. Commerce arbitrarily treated CBP TRLED's EAPA duty evasion determination as the final determination of CBP even though interested parties had specifically noted that TRLED's EAPA decision had already been appealed and was pending an administrative review by CBP Headquarters. Commerce's reliance on CBP TRLED's EAPA determination as CBP's final determination was procedurally invalid and not supported by substantial evidence and was not in accordance with law. Commerce's failure to even acknowledge and consider the CBP Headquarters administrative review EAPA decision after it was issued was a significant procedural violation that deprived the interested parties from an opportunity to comment on how these differences between CBP Headquarters' administrative review decision and CBP TRLED's decision should affect Commerce's Post-Preliminary Analysis.

39. Commerce arbitrarily refused to give parties an opportunity to comment on the decision made by CBP Headquarters in its administrative review of CBP TRLED's EAPA decision even though interested parties specifically noted that the basis of CBP Headquarters' EAPA decision was significantly different from CBP TRLED's EAPA decision which was the basis of Commerce's Final Results.

40. Commerce's Final Results failed to address significant differences in the factual and legal bases of the decisions made by CBP TRLED and CBP Headquarters regarding their respective determinations of duty evasion and undervaluation. Commerce's Final Results thus was not supported by substantial evidence and was not in accordance with law.

**COUNT TWO**

41. Paragraphs one through forty are incorporated herein by reference.

42. Commerce's decision to rely on the decision made by CBP TRLED in the EAPA investigation that there was duty evasion by the undervaluation of imported xanthan gum from China was not supported by substantial evidence and was not in accordance with law.

43. Commerce's Final Results failed to account for significant differences between CBP's EAPA investigation and Commerce's antidumping administrative review.

44. The period of review of Commerce's administrative review (July 1, 2023- June 30, 2024) overlapped with the period of review of CBP's EAPA investigation (April 4, 2024 – pendency of EAPA investigation) only by about three months.

45. Commerce in its Post-Preliminary Analysis and Final Results arbitrarily adopted CBP's determination that the sales between the Chinese xanthan gum producers and their U.S. affiliates were not *bona fide* sales but did not address the differences between CBP's analysis of *bona fide* sales for valuation purposes and Commerce's analysis of *bona fide* sales in antidumping proceedings.

46. Commerce did not issue any questionnaires asking any respondents (mandatory or separate rate respondents) to provide any additional information regarding the entered value of the affiliated party import sales transactions or whether the affiliated party transactions were *bona fide*. Commerce did not conduct any fact-finding of its own on the main issue that it based

its AFA determination on and instead relied entirely on CBP's EAPA determination even though the record evidence considered by CBP was not fully on the record of Commerce's review.

47. Commerce in its Post Preliminary Analysis and Final Results failed to adequately explain how undervaluation of entered value reported for the last three months of Commerce's period of review in just three data fields in the U.S. sales databases (i.e., entered value, U.S. duty, inventory carrying cost) affected the dumping margin calculation that would justify the application of total AFA. Commerce in its Final Results failed to address these significant differences between CBP's EAPA investigation and Commerce's administrative review that undermine the validity of the decision of Commerce to rely entirely on CBP's duty evasion determination that the affiliated party transfer price transaction between the Chinese xanthan gum exporters and their U.S. affiliates were not *bona fide*.

**COUNT THREE**

48. Paragraphs one through forty-seven are incorporated herein by reference.

49. Commerce's determination that Fufeng and Deosen withheld the actual U.S. customs value of its xanthan gum entries during a portion of the period of review was not supported by record evidence. Fufeng and Deosen did report U.S. entered value in their U.S. sales databases.

50. Commerce during the review did not raise any questions regarding the validity or accuracy of these reported U.S. entered value and did not ask Fufeng or Deosen to submit any revised entered values. Before issuing its Post-Preliminary Analysis, Commerce had not notified Fufeng or Deosen of any deficiencies of the reported entered values and thus did not provide any opportunity for Fufeng and Deosen to explain or remedy the alleged undervaluation of the entered values.

51. Commerce did not identify what was the actual entered value that should have been reported by Fufeng or Deosen.

**COUNT FOUR**

52. Paragraphs one through fifty-one are incorporated herein by reference.

53. Substantial record evidence establishes that the transactions between Fufeng and its U.S. affiliate First Biotech and Deosen and its U.S. affiliate Deosen USA were bona fide sales.

54. Commerce failed to identify any evidence, let alone substantial evidence from the record of this review that the Fufeng and Deosen transactions with their respective U.S. affiliates were not bona fide sales.

55. Commerce's decision to rely solely on the preliminary determination by CBP TRLED that the transactions between Fufeng and Deosen with their respective U.S. affiliates were not bona fide sales is not supported by substantial record evidence of this review and thus is contrary to law.

**COUNT FIVE**

56. Paragraphs one through fifty-five are incorporated herein by reference.

57. Commerce's decision in the Final Results to apply facts available with adverse inferences did not comply with statutory requirements for identifying the specific deficiency or information gap in the respondents' responses and to give them an opportunity to remedy or explain the deficiency or gap. Commerce in the Post-Preliminary Analysis did not identify any specific deficiency or information gap in Fufeng's or Deosen's responses (or Jianlong or any separate rate respondents' responses) and thus did not give any opportunity for respondents to remedy or explain the alleged deficiency or information gap.

58. Commerce applied total AFA without explaining why partial AFA would not be a sufficient measure. Given that the entered value has only minimal impact on Commerce's calculation of dumping margins, Commerce could have corrected only those fields affected by the reported entered values. Instead, Commerce's arbitrarily resorted to application of total AFA without explaining why undervalued entered value would result in any significant change in the dumping margin.

**COUNT SIX**

59. Paragraphs one through fifty-eight are incorporated herein by reference.

60. In the Final Results Commerce assigned a dumping margin to separate rate respondents including Jianlong that was based on an average of the antidumping duty rate calculated for the two mandatory respondents, Fufeng and Deosen. Commerce's margin for the separate rate respondents did not accurately reflect the findings made by CBP's TRLED in its EAPA determination that found that the degree of undervaluation of Jianlong's import entries was significantly lower than the undervaluation found for Fufeng's and Deosen's import entries. The dumping margin assigned to Jianlong by Commerce arbitrarily penalized Jianlong and did not reflect the findings made by CBP in its EAPA determination.

**COUNT SEVEN**

61. Paragraphs one through sixty are incorporated herein by reference.

62. For the Final Results, to the extent Commerce's calculation of the antidumping duty rates for mandatory respondents Fufeng and Deosen are found to be not supported by substantial evidence and otherwise not in accordance with law, the antidumping rate assigned to the non-selected respondents under review including Jianlong also was not supported by substantial evidence and otherwise not in accordance with law.

## COUNT EIGHT

63. Paragraphs one through sixty-two are incorporated herein by reference.

64. Upon information and belief, Commerce erred in other aspects of its Final Results that will be evident upon review of Commerce's record in this case.

## DEMAND FOR JUDGMENT AND PRAYER FOR RELIEF

65. For the reasons stated above, Plaintiff respectfully requests that the Court:

(a) enter judgment in Plaintiff's favor;

(b) declare that with respect to the issues raised in this Complaint, Commerce's determinations and all related findings and conclusions are unsupported by substantial evidence on the record or are otherwise not in accordance with law;

(c) remand these matters related to the Final Results to Commerce for redetermination consistent with the Court's opinion, including the calculation of a revised antidumping duty margin for Jianlong pursuant to any remand; and

(d) provide such other relief as the Court deems just and proper.

Respectfully submitted,

/s/ Adams C. Lee

Adams C. Lee

**HARRIS SLIWOSKI LLP**
600 Stewart Street, Suite 1200
Seattle, WA 98101
Tel: (264) 234-5657
adams@harris-sliwoski.com

Counsel for Plaintiff Jianlong Biotechnology Corp., Ltd.

September 1, 2026